6 F.3d 63
 Don W. STEPHENS, Commissioner of Insurance of the
Commonwealth of Kentucky, in his capacity as
Liquidator of Delta America Re Insurance
Company, Plaintiff-Appellee,
v.
NATIONAL DISTILLERS AND CHEMICAL CORPORATION, A Foreign
Corporation, now known as Quantum Chemical
Corporation, Defendant-Appellant.
 No. 1703, Docket 93-7182.
 United States Court of Appeals,
Second Circuit.
 Argued June 14, 1993.
Decided Sept. 17, 1993.
 
 Joseph P. Dailey, New York City, for defendant-appellant.
 W. Henry Jernigan, Jr., Jackson & Kelly, Lexington, KY, William F. Costigan, Costigan & Berns, New York City, for defendant-appellee.
 Before: KEARSE, PRATT, and MINER, Circuit Judges.
 
 
 1
 Certificate to the Kentucky Supreme Court (pursuant to Kentucky Rules of Procedure--Rule 76.37--Certification of Question of Law)
 
 
 2
 There are determinative questions of Kentucky law in this diversity case to which it appears there is no controlling precedent in the decisions of the Kentucky Supreme Court. We therefore certify the following questions to the Kentucky Supreme Court pursuant to Kentucky Rule of Civil Procedure 76.37.
 
 QUESTIONS OF LAW
 
 3
 1. In determining whether dividends of a reinsurance corporation were properly paid under Kentucky law, can information received by the corporation after the date of payment be used to retroactively determine its financial condition at the time of payment?
 
 
 4
 2. If the answer to question 1 is "yes", are shareholders of the reinsurance company directly liable for return of dividends paid during a period when the corporation was in fact insolvent, but the dividends were received in good faith?
 
 STATEMENT OF FACTS AND NATURE OF CONTROVERSY
 
 5
 Delta America Re Insurance Company (Delta) was an insurance company licensed and chartered under the laws of the Commonwealth of Kentucky. From the date of its formation until it was sold in September 1983, Delta was a wholly-owned subsidiary of National Distillers and Chemical Corporation, now known as Quantum Chemical Corporation (Quantum), a Virginia corporation that is the defendant in this action. Delta engaged in the business of providing reinsurance coverage, first to Quantum, and later also to insurers and other reinsurance companies.
 
 
 6
 After the sale of Delta in 1983, the Commissioner of Insurance for the Commonwealth of Kentucky, the liquidator, petitioned the Franklin Circuit Court for an order declaring Delta insolvent and ordering its assets liquidated for the benefit of its creditors pursuant to the provisions of KRS Secs. 304.33-010, et seq. That order was granted on September 15, 1985. The fact of Delta's insolvency at the time of that order is not contested.
 
 
 7
 This adversary proceeding was instituted by the Liquidator against Quantum alleging, among other things, that Delta's liabilities exceeded its assets as of December 31, 1980, and that insolvent condition prevailed at all times thereafter. As a consequence of this, according to the Liquidator, Delta had no assets from which to lawfully declare dividends during this period. Notwithstanding this fact, Delta paid Quantum during this same period $12,293,161.00 in dividends. The Liquidator contends that these dividends are properly assets of Quantum's now-defunct subsidiary and are recoverable and applicable to the outstanding indebtedness of that subsidiary.
 
 
 8
 The critical facts are supplied by Quantum's responses to the Liquidator's requests to admit that Delta was insolvent at year end 1980 and each year end thereafter through 1984. In response, Quantum stated with respect to year end 1984 that "[b]ased on claim information available as of the date of this response, [Quantum] admits that the liabilities of Delta exceeded its assets...." As to each of the preceding years, Quantum likewise admitted that Delta's assets exceeded its liabilities, but went on to deny for years 1980 through 1983 that "Delta's liabilities as defined in KRS Sec. 304.6-040, exceeded its assets on December 31 [of the year involved]."
 
 
 9
 The insolvency of Delta, and the failure to discover it earlier, stemmed primarily from the difficulty of calculating and monitoring the accuracy of loss reserves established by insurance companies. Because future claims will be a drain on an insurer's resources, "loss reserves" are established to estimate the value of claims which will be paid on policies which the company is carrying. Loss reserves consist of both "case reserves" and "incurred-but-not reported reserves", or "IBNR" reserves. Case reserves are reserves established upon the filing of a claim; since not every claim will be fully paid, case reserves represent only the estimated losses to be insured on these claims. However, they are at least substantially predictable. IBNR reserves, on the other hand, are reserves set aside before claims are even filed. Thus IBNR reserves are extremely conjectural, and may need adjustment as time passes and their accuracy can be tested in retrospect. Although they are only estimates, both case reserves and IBNR reserves must be reported as liabilities in the financial records of an insurance company.
 
 
 10
 Thus, KRS Sec. 304.6-040 requires insurers such as Delta, in determining their financial condition to estimate the amount "necessary to pay all * * * unpaid losses and claims incurred on or prior to the date of statement, whether reported or unreported, together with the expenses of adjustment or settlement thereof." (emphasis added). Since the reporting and processing of claims arising from a single insured incident may string out over a period of many years, the estimates for reserves necessarily change as more and more information about the claims is acquired. For purposes of the motion giving rise to this appeal, it was stipulated that while Delta's estimates were in error, the errors were made in good faith.
 
 
 11
 Quantum contends that since Delta's good faith estimates of its loss reserves indicated that there was a surplus at the time each of the contested dividends was paid, the dividends were proper when paid and cannot now be recovered, even though in the light of later information about the claims underlying the reserves Delta was actually insolvent when the dividends were paid.
 
 
 12
 The Liquidator contends that actual insolvency is the controlling fact and that Delta's good faith belief, based on its reserve estimates, that it was solvent when the dividends were paid is irrelevant.
 
 
 13
 This legal issue was first decided on summary judgment by Judge William L. Graham, Jr. of the Franklin Circuit Court, after the case had been remanded to him from the U.S. District Court for the Eastern District of Kentucky. His decision did not become final, however, because Quantum moved for reconsideration and before that motion could be decided, the Sixth Circuit Court of Appeals reversed the order of remand. As a result, the action was returned to the Eastern District of Kentucky, which in turn transferred it to the Southern District of New York.
 
 
 14
 In the Southern District of New York, Judge John S. Martin undertook to decide the motion to reconsider Judge Graham's decision. On this issue of Kentucky law, however, Judge Martin deferred to Judge Graham, stating:
 
 
 15
 Finding actual insolvency to be the dispositive issue, the Kentucky state court held, and this Court does not question, that "the statutes and relevant case law suggest that when called upon to balance the interests of the shareholders of an insolvent company such as Delta against the interest of that corporation's creditors, the interest [sic] of the latter are afforded pre-eminent protection." Delta America Re Ins. Co. v. Morgan, No. 85-CI-0591-AP-6, slip op. 4 (Ky.Cir.Ct. November 29, 1989). Thus, even though the dividends may have been made and received in good faith, that the company was insolvent in fact renders them illegal under Kentucky law and subject to repayment. As Distillers cites no Kentucky authority contradicting this determination, the motion to reconsider the judgment of the Kentucky state court will be denied.
 
 
 16
 This appeal followed. On appeal Quantum and the Liquidator reassert the positions advanced below, thus presenting as a dispositive issue of Kentucky law question 1 certified above:
 
 
 17
 In determining whether dividends of a reinsurance corporation were properly paid under Kentucky law, can information received by the corporation after the date of payment be used to retroactively determine its financial condition at the time of payment?
 
 
 18
 Question 2 need be addressed only if question 1 is answered affirmatively. On question 2, Quantum argues that the liability of shareholders is governed by KRS Sec. 271A.240; that under that statute shareholders are no longer liable for improperly paid dividends, unless the dividends were received in bad faith; and that the lower court therefore erred in its decision that the dividends paid to Quantum based on good-faith reserve estimates that subsequently proved to be in error must be returned to the Liquidator by shareholder Quantum.
 
 
 19
 Early Kentucky common law did not recognize a good faith defense in actions to recover illegal dividends from shareholders. In 1946 that common law rule was codified in KRS Sec. 271.275(2) which read:
 
 
 20
 (2) Every shareholder who received any such dividend * * * shall in the following instances be individually liable to the corporation, and, in the event of its dissolution or insolvency, to its creditors, in an amount equal to the amount so received by him.
 
 
 21
 (a) When no director is liable to the corporation as provided in subsection (1) of this section, or
 
 
 22
 (b) To the extent that the corporation is unable to obtain satisfaction after judgments recovered against directors upon the liability imposed by subsection (1) of this section.
 
 
 23
 KRS Sec. 271.275(2).
 
 
 24
 In 1972, however, Sec. 271.275(2) was repealed, and the Kentucky legislature enacted KRS Sec. 271A.240, which reads in relevant part:
 
 
 25
 Any director against whom a claim shall be asserted * * * for the payment of a dividend * * * and who shall be held liable thereon shall be entitled to contribution from the shareholders who accepted or received any such dividend * * *, knowing such dividend or distribution to have been made in violation of this chapter, in proportion to the amounts received by them.
 
 
 26
 KRS Sec. 271A.240(4).
 
 
 27
 The 1972 statute, which was still in effect when the dividends in this case were declared, was a substantial departure from the prior law.
 
 
 28
 Quantum contends that enactment of Sec. 271A.240 in 1972, coupled with the repeal of Sec. 271.275(2), created a rule for Kentucky that subjected shareholders to liability for improper dividends only at the instance of a director of the corporation and even then, only if the shareholder knew that the dividend had been paid illegally.
 
 
 29
 The Liquidator concedes that the 1972 Act does not make shareholders directly liable for dividends. He argues, however, that shareholders are liable under the old common law rule of strict liability, which he claims, was revived sub silentio in 1972 when the 1946 Act was repealed.
 
 
 30
 In short, the central dispute is whether the common law rule was revived in 1972 by the repeal of the 1946 Act or whether the common law rule as codified by the 1946 Act was replaced by the 1972 Act. Resolution of this dispute will provide the answer to question 2 listed above:
 
 
 31
 Are shareholders of the reinsurance company directly liable for return of dividends paid during the period 1981 to 1983, when the corporation was in fact insolvent, but the dividends were received in good faith?
 
 
 32
 The certified questions should be decided by the Kentucky Supreme Court for the following reasons:
 
 
 33
 (1) They require the interpretation of Kentucky statutes and caselaw.
 
 
 34
 (2) The underlying issues involve a balancing of the competing policies of state law that underlie these statutes and cases, and the Kentucky Supreme Court is best situated to guide the growth of the jurisprudence in this area.
 
 
 35
 (3) A resolution of the question in this case by the Kentucky Supreme Court will reduce the likelihood of inconsistent or conflicting decisions on these issues of Kentucky law.
 
 
 36
 (4) Five suits involving approximately 75 parties are currently pending in the Southern District of New York arising out of the Delta liquidation, and resolution of the certified questions in this case may help to expedite the disposition of those cases consistently with the law of Kentucky.
 
 
 37
 For the above reasons, the foregoing is hereby certified to the Kentucky Supreme Court as ordered by the United States Court of Appeals for the Second Circuit.